# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| THE R.J. ARMSTRONG LIVING TRUST, a Nevada testamentary entity, and DAVID C. ARMSTRONG, an individual, | Case No.: 3:22-cv-00375-ART-CSD |
| Plaintiffs | **Order** |
| v. | Re: ECF No. 74 |
| SUSAN HELEN ARMSTRONG HOLMES, an individual, | |
| Defendant | |

| |
|---|
| SUSAN HELEN ARMSTRONG HOLMES, an individual, |
| Counterclaimant |
| v. |
| THE R.J. ARMSTRONG LIVING TRUST, a Nevada testamentary entity, and DAVID C. ARMSTRONG, an individual, |
| Counter-Defendants |

David Armstrong is the trustee of the R.J. Armstrong Living Trust (the Trust). He and his sister, Susan Holmes, are beneficiaries of the Trust. After their father passed away, Armstrong, Holmes, and Holmes' two adult children—William and Jennifer—entered into a settlement agreement concerning division of the Trust assets. The siblings are now involved in this litigation, where they assert competing claims for breach of the settlement agreement, fiduciary duties and the implied covenant of good faith and fair dealing.

The Trust/Armstrong filed a motion for spoliation sanctions and to compel production of certain discovery. (ECF Nos. 74, 74-1 to 74-10.) Holmes filed a response. (ECF No. 81.) The Trust/Armstrong filed a reply. (ECF No. 82.)

For the reasons set forth below, the motion is granted in part, and deferred in part.

## I. BACKGROUND

Beginning in 2021, Holmes began to threaten to sue Armstrong for mismanagement of the Trust when he was acting as co-trustee with their father.[1] On July 7, 2021, Holmes wrote an email to counsel for the Trust/Armstrong, Mr. Stephenson, where she alluded to litigation: "I don't want this to get ugly or go into litigation as nobody will win." (ECF No. 74-1 at 2.) On May 4, 2022, Holmes emailed Plaintiffs'/Counter-Defendants' counsel: "I hope David seriously considers settling this between the two of us to avoid any further litigation." (ECF No. 74-1 at 3.)

The Trust, Armstrong, Holmes, William and Jennifer entered into the settlement agreement to resolve their disputes on May 9, 2022. Under the agreement, within 60 days Holmes was to be paid $650,000, and William and Jennifer were each to be paid $15,000. The settlement agreement also contains a non-disparagement provision. (ECF No. 1-3 at 13-31.)

On May 22, 2022, Holmes sent a text message to Mr. Stephenson, who responded by advising that legal action in response to her statements was a possibility. (ECF No. 1-3 at 33-35.)

On July 5, 2022, Holmes sent Mr. Stephenson another text message stating that if she did not get the agreed upon settlement, to "[b]ring it on. Ready for your lawsuit in September." (ECF No. 1-3 at 38.) On July 13, 2022, Holmes texted Mr. Stephenson: "I sent you an email today and just wanted you to know that I intend to get to the bottom of what David did with my Dad's five

---

[1] The settlement agreement itself acknowledges that Holmes and her children alleged that Armstrong committed fraud and breached his fiduciary duties by self-dealing and imprudently/improperly investing and pledging the Trust's funds. (ECF No. 1-3 at 14 ¶ H.)

2

houses he bought. If there is any income tax evasion or whatever as I have a feeling he did something dishonest with those five homes. I need closure in order to get on with my life." (ECF No. 1-3 at 42.) On July 21, 2022, she texted Mr. Stephenson that if she was not paid under the agreement, she would proceed to litigation. (ECF No. 1-3 at 47.)

On July 25, 2022, Holmes sent her son William text messages that included the following statements: "I will take his house and his restaurant. I have Truth on my side. You are stuck defending a Liar! My lawyer is glad to hear this news as he looks forward to beating him up in court. Bring it on. Justice. … I will seek 100 percent restitution also for my children he robbed of their inheritance." (ECF No. 74-5 at 50.)

On the morning of July 28, 2022, Holmes texted her son: "Looks like I will be suing Dave. Meant to be I guess. … Well I will see to it he goes down." Her son responded: "listen to Piper[2] [sic]" and "cut all communication with Dave/Spencer," to which Holmes said, "Already did that. DELETED." (ECF No. 74-5 at 53.)

That day, the Trust/Armstrong filed this action in State court against Holmes asserting claims for breach of the non-disparagement provision of the agreement, as well as breach of the implied covenant of good faith and fair dealing. (ECF No. 1-3.) Mr. Stephenson sent Holmes an evidence preservation letter by email and certified mail, which specifically advised her to "save and preserve all text messages and emails that you have sent to any person or governmental entity regarding David C. Armstrong and/or the R.J. Armstrong Living Trust from May 9, 2022 to the present." She was told that a failure to do so may expose her to criminal and/or civil liability, including spoliation sanctions. Holmes received the email, and forwarded it to her attorney. (ECF No. 74-1 at 5; ECF No. 74-2 at 2-3.) At 6:01 p.m., she texted Willliam: "Dave is

---

[2] Referring to Holmes' current counsel, Mr. Pyper.

suing me. Just got the papers." (ECF No. 74-5 at 53.) On July 30, 2022, she texted William: "How was your day son?? Worked on case against David copying emails and texts etc. at total peace. He will be brought to his knees." (ECF No. 74-5 at 56.)

At the beginning of this litigation, the Trust/Armstrong served Holmes with a request for production of all emails and text messages she had exchanged with Jennifer, William, Armstrong, Spencer Armstrong (her nephew), Mr. Stephenson, Kerry Armstrong (her niece), and anyone else regarding the R.J. Armstrong Living Trust or David C. Armstrong. (ECF No. 74-3.) She only produced emails and text messages with Mr. Stephenson and Spencer Armstrong. In her objection to the requests, Holmes states that she regularly deletes her emails and text messages after reading them or sending them. (*Id.*)

In the meet and confer process, Holmes' counsel acknowledged that Holmes was sent a spoliation letter early on in the case, but counsel reiterated that Holmes "has a long standing practice of deleting old emails and text messages after she has read them." Holmes' counsel did state in his email that Holmes had "not deleted any relevant emails and text messages *since* receiving the spoliation letter[.]" (ECF No. 74-4 at 2-3, emphasis added). At the hearing on this motion, however, Holmes' counsel said he had not asked his client whether she had continued her practice of deleting messages after she received the spoliation letter.

In a subsequent email between counsel, it was represented that Holmes "kept what she thought to be important texts, but that election [wa]s in her sole discretion, not David's." Her counsel maintained that "she was under no duty to save all text messages or emails prior to July 28, 2022[.]"

After receiving a subpoena, William apparently provided Holmes' counsel with the text messages between them. The weekend before Holmes' deposition, her counsel sent Mr.

Stephenson 54 pages of text messages between Holmes and William between May 9, 2022, and August 2, 2022. (ECF No. 74-5.) Holmes' counsel maintains that messages sent between Holmes and William *after* that time are not relevant to this litigation, and he has not asked William to provide such messages.

Holmes deleted all of her messages to her daughter, Jennifer, and Jennifer apparently has a similar practice to her mother, and she also deleted all of the messages she received from her mother.

The Trust argues that Holmes intentionally and in bad faith deleted her text messages and emails regarding Armstrong and the Trust, except for those she sent to her nephew, Spencer and Mr. Stephenson. They request that the court impose spoliation sanctions, including the entry of default judgment against Holmes and dismissal of her counterclaims, or alternatively, issue an adverse inference instruction that the text messages and emails sent since May 9, 2022 contain derogatory statements about Armstrong. In addition, they request that the court order Holmes to produce the text messages she exchanged with her son William from August 2, 2022 to the present.

## II. DISCUSSION

**A. Spoliation under Rule 37**

Sanctions are available under Federal Rule of Civil Procedure 37(e) when "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery[.]" Fed. R. Civ. P. 37(e). There are two categories of sanctions available under Rule 37(e). First, if the court finds another party is prejudiced by the loss of the information, the court "may order measures no greater than necessary to cure the

prejudice[.]" Fed. R. Civ. P. 37(e)(1). Second, if the court finds that the party "acted with the intent to deprive another party of the information's use in litigation," the court may: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter default judgment." Fed. R. Civ. P. 37(e)(2)(A)-(C).

The Rule "authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The Trust/Armstrong argue that the court may sanction a party for spoliation under Rule 37, its inherent authority, or both. However, the Advisory Committee's notes to the 2015 amendment to Rule 37 indicate that with respect to electronically stored information (ESI), such as that at issue here, Rule 37(3) "forecloses reliance on inherent authority or state law to determine when certain measures should be used." *Id.*; *see also Newberry v. County of San Bernardino*, 750 Fed.Appx. 534, 537 (9th Cir. 2018) (finding Rule 37(e) foreclosed the moving party's reliance on the court's inherent authority to issue sanctions for the loss of ESI); *Monarrez v. Wal-Mart Stores, Inc.*, No. 2:21-cv-00431-ART-DJA, 2023 WL 2167760, at * 2 (D. Nev. Feb. 22, 2023) ("only Rule 37(e) sanctions are available" for spoliation of ESI); *Winecup Gamble, Inc. v. Gordon Ranch, LP,* No. 3:17-cv-00163-RCJ-WGC, 2020 WL 3840420, at *3 n. 1 (D. Nev. July 8, 2020), *reversed on other grounds in* 850 Fed.Appx. 573 (9th Cir. 2021) ("the 2015 amendment forecloses a court from imposing sanctions for spoliation of ESI under [the court's inherent authority]"); *Ind. Techs., LLC v. Otodata Wireless Network, Inc.*, No. 3:20-cv-00072-RCJ-CLB, 2020 WL 1433525, at *5 (D. Nev. Mar. 23, 2020), *remanded on other grounds at* 836 Fed.Appx. 531 (9th Cir. 2020) (Rule 37(e) provides the only basis for sanctions for spoliation of ESI); *Small*

6

*v. Univ. Med. Ctr.*, No. 2:13-cv-0298-APG-PAL, 2018 WL 3795238, at *66 (D. Nev. Aug. 9, 2018) ("The 2015 amendment to Rule 37(e) now 'forecloses reliance on inherent authority or state law' to determine whether and what sanctions are appropriate for a party's loss of discoverable ESI.").

**B. The Duty to Preserve**

Sanctions under Rule 37(e) may be imposed "only if the lost information should have been preserved in anticipation or conduct of litigation and the party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e) advisory committee notes to 2015 Amendment. The Rule is based on the common law duty "to preserve relevant information when litigation is reasonably foreseeable." *Id*. The corollary is also true: "The rule does not apply when information is lost before a duty to preserve arises." *Id*. In determining whether and when a duty to preserve arose, the court "should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." *Id.*

"[A] duty to preserve ESI can arise far in advance of the formal retention of a lawyer or the filing of a lawsuit." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 337 (D. Ariz. Feb. 3, 2022). The duty "extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Aramark Mgmt., LLC v. Borgquist*, No. 8:18-cv-01888-JLS-KESx, 2021 WL 864067, at *3 (C.D. Cal. Jan. 27, 2021), *adopted in* 2021 WL 863746 (C.D. Cal. Mar. 8, 2021); *Surowiecv. Cap. Title Agency, Inc.*, 790 F.Supp.2d 997, 1005 (D. Ariz. 2011) (citation and quotation marks omitted).

The court finds that Holmes knew litigation concerning the settlement agreement was reasonably foreseeable at least as of May 9, 2022, when she entered into the agreement which contained the provisions regarding payments to be made as well as the non-disparagement

provision and accompanying remedies for its breach. Given her prior communications alluding to litigation, she was certainly on notice at that time there could be future litigation regarding the settlement agreement.

**C. Can the Information be Restored or Replaced through Additional Discovery?**

Rule 37(e) applies only when the ESI is lost. Fed. R. Civ. P. 37(e) advisory committee notes to 2015 amendment. Thus, the court's "initial focus [is] on whether the lost information can be restored or replaced through additional discovery." *Id*. If the information is restored or replaced, then "no further measures should be taken." *Id*. Additionally, "efforts to restore or replace lost information through discovery should be proportional to the apparent importance of the lost information to claims or defenses in the litigation." *Id*.

The Trust/Armstrong requested text messages and emails between Holmes and Jennifer, William, Armstrong, Spencer Armstrong, Mr. Stephenson, Kerry Armstrong, and anyone else regarding the Trust and/or Armstrong.

Messages with Spencer Armstrong and Mr. Stephenson were produced. Presumably, Armstrong has any messages sent to him by Holmes. Therefore, Holmes will not be subject to sanctions with respect to these communications. That leaves at issue any messages with Jennifer, William, Kerry Armstrong.[3]

**a. William**

William produced text messages with his mother between May 9 and August 2, 2022. Therefore, the court will not take any further action with respect to Holmes' deletion of these messages.

---

[3] At the present time, the Trust/Armstrong have not presented evidence that Holmes may have communicated with and deleted communications with anyone else regarding the Trust/Armstrong.

No messages have been produced between Holmes and William from August 2, 2022, going forward. Holmes' counsel argued at the hearing that these messages are not relevant since the alleged breach of the agreement had already occurred. The court disagrees. Under Federal Rule of Civil Procedure 26, these communications may be relevant to the Trust's/Armstrong's claims and defenses, and in particular, regarding whether any additional breaches of the agreement occurred. Therefore, the court will require Holmes to file a notice within 14 days of the date of this Order stating that text messages and emails between Holmes and William from August 2, 2022, to the present concerning Armstrong and/or the Trust have been produced to counsel for the Trust/Armstrong. If this does not occur, the court will address whether spoliation sanction should be imposed.

**b. Kerry Armstrong**

Holmes represents that she contacted her wireless provider as well as Apple to attempt to recover the messages she deleted, to no avail. Holmes' counsel did not indicate that he has reached out to Kerry Armstrong to determine whether Kerry Armstrong possesses any text messages or emails with Holmes regarding the Trust and/or Armstrong. Within 14 days of the date of this Order, Holmes' counsel shall contact Kerry Armstrong and file a notice indicating whether he was able to recover any text messages or emails between Holmes and Kerry Armstrong regarding the Trust and/or Armstrong and whether they have been produced to counsel for the Trust/Armstrong. If Holmes is unable to recover messages with Kerry Armstrong, the court will address whether spoliation sanctions should be imposed.

**c. Jennifer**

Holmes apparently deleted her messages with Jennifer, and Jennifer likewise has a practice of regularly deleting her messages.

With respect to any messages sent between Holmes and Jennifer after July 28, 2022, Holmes does not dispute that both she and Jennifer were served with an evidence preservation letter at that time. Holmes' counsel stated in an email that his client did not delete communications after she received the evidence preservation letter. However, counsel then represented at the hearing that he had not asked his client that question.

Within 14 days of the date of this Order, Holmes' counsel shall determine whether Holmes is in possession of any text messages or emails with Jennifer regarding the Trust/Armstrong from after July 28, 2022. Holmes' counsel shall also contact Jennifer and determine whether she is in possession of any text messages or emails with Holmes regarding the Trust/Armstrong from after July 28, 2022. Holmes shall file a notice with the court within 14 days of the date of this Order advising the court of the results of these inquiries, and if either Holmes or Jennifer is in possession of such communications, indicating that they have been produced to Mr. Stephenson.

The court will then address whether spoliation sanctions should be imposed with respect to messages with Jennifer that Holmes deleted between May 9, 2022, and July 28, 2022, and with respect to any messages between them that were deleted after July 28, 2022.

### III. CONCLUSION

Trust's/Armstrong's motion (ECF No. 74) is **GRANTED** insofar as Holmes is required to produce text messages and emails with her son William from August 2, 2022, to the present regarding Armstrong and/or the Trust. This shall occur within **14 days** of the date of this Order. The request for the imposition of spoliation sanctions is **DEFERRED**.

Within **14 days** of the date of this Order, Holmes shall file a notice indicating:

(1) Whether text messages and emails with William from August 2, 2022, going forward regarding Armstrong and/or the Trust have been produced to counsel for the Trust/Armstrong.

(2)Whether Holmes was able to recover any text messages or emails between Holmes and Kerry Armstrong regarding the Trust and/or Armstrong and whether they have been produced to counsel for the Trust/Armstrong.

(3) Whether Holmes or Jennifer are in possession of text messages or emails regarding the Trust/Armstrong from June 28, 2022, going forward, or whether such messages were deleted. If either is in possession of such messages, the notice shall indicate whether they have been produced to Mr. Stephenson.

The court will address the imposition of any spoliation sanctions after this notice is filed.

**IT IS SO ORDERED**.

Dated: February 7, 2024

Craig S. Denney
United States Magistrate Judge