**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Case No.: 3:22-cv-00375-ART-CSD

DAVID C. ARMSTRONG, as Trustee of the
R.J. Armstrong Living Trust, a Nevada
testamentary entity, and DAVID C.
AMSTRONG, an individual,

       Plaintiffs

v.

SUSAN HELEN ARMSTRONG HOLMES,
an individual.

       Defendant

SUSAN HELEN ARMSTRONG HOLMES,
an individual,

       Counterclaimant,

v.

DAVID C. ARMSTRONG, as Trustee of the
R.J. Armstrong Living Trust, a Nevada
testamentary entity, and DAVID C.
AMRSTRONG, an individual,

       Counter-defendants

**Order**

Re: ECF No. 74

Before the court is the motion for spoliation sanctions and motion to compel filed by

Plaintiffs/Counter-defendants David C. Armstrong and the R.J. Armstrong Living Trust (the

Trust) filed a motion for spoliation sanctions. (ECF Nos. 74, 74-1 to 74-10.)[1]

---

[1] By virtue of the second amended complaint (ECF No. 104)  the plaintiffs/counter-defendants
are now properly identified as David C. Armstrong, both individually and as trustee of the Trust
(the real party in interest). They will now be collectively referred to as "Armstrong."

Defendant/Counterclaimant Susan Holmes filed a response.  (ECF No. 81.) Armstrong filed a reply. (ECF No. 82.)

## I. BACKGROUND

On February 7, 2024, the court issued an order granting the motion to compel insofar as Susan Holmes was required to produce text messages and emails with her son, William Holmes, from August 2, 2022, to the present regarding Armstrong and/or the Trust, and file a notice of such production.

With respect to the motion for spoliation sanctions, the court made a finding that Susan Holmes' duty to preserve arose at least as of May 9, 2022, when she entered into the settlement agreement which contained the provisions regarding payments to be made as well as the non-disparagement provision and accompanying remedies for its breach. The court deferred ruling on the spoliation motion with respect to text messages and/or emails regarding Armstrong or the Trust between Susan Holmes and her daughter, Jennifer Holmes, as well as her niece, Kerry Armstrong, to allow Susan Holmes an opportunity to determine if the messages could be restored or replaced through additional discovery. The court ordered Susan Holmes to file a notice indicating whether Holmes was able to recover any text messages or emails to or from Kerry Armstrong and to or from Jennifer Holmes, or whether they were deleted. The court further ordered Susan Holmes to file a notice indicating whether text messages and emails between her and her son, William Holmes, had been produced for the time period of August 2, 2022, to the present.

///

///

///

**II. DISCUSSION**

**A. Rule 37(e)**

Sanctions are available under Federal Rule of Civil Procedure 37(e) when "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery[.]" Fed. R. Civ. P. 37(e).

There are two categories of sanctions available under Rule 37(e). First, if the court finds another party is prejudiced by the loss of the information, the court "may order measures no greater than necessary to cure the prejudice[.]" Fed. R. Civ. P. 37(e)(1). Second, if the court finds that the party "acted with the intent to deprive another party of the information's use in litigation," the court may: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter default judgment." Fed. R. Civ. P. 37(e)(2)(A)-(C).

Rule 37(e) applies only when the ESI is lost. Fed. R. Civ. P. 37(e) advisory committee notes to 2015 amendment. Thus, the court's "initial focus [is] on whether the lost information can be restored or replaced through additional discovery." *Id*. If the information is restored or replaced, then "no further measures should be taken." *Id*. If the lost messages cannot be restored or replaced, then the court must address whether sanctions are appropriate under Rule 37(e)(1) or (2).

**1. William Holmes**

The court is satisfied that text messages and/or emails to or from Williams Holmes to Susan Holmes from August 2, 2022 going forward regarding Armstrong and/or the Trust have

1 | been produced to counsel for Armstrong. Therefore, the motion for spoliation sanctions is denied

2 | with respect to any text messages or emails between Susan Holmes and William Holmes.

3 | **2. Kerry Armstrong**

4 | In her declaration, Kerry Armstrong states that in 2022, she received a text from

5 | Armstrong which included snide comments about Susan Holmes. That text message is included

6 | as an exhibit to her declaration. Kerry Armstrong further states that Susan Holmes' counsel, Mr.

7 | Pyper, contacted her in January of 2023, and she informed him that she had received no other

8 | text messages from either Armstrong or Susan Holmes in 2022 or 2023. (ECF No. 112.)

9 | Given Kerry Armstrong's statement that she did not receive any other text message from

10 | Armstrong or Holmes in 2022-2023, the motion for spoliation sanctions is denied with respect to

11 | messages with Kerry Armstrong.

12 | **3. Jennifer Holmes**

13 | In her declaration, Jennifer Holmes states that at this time she cannot specifically recall

14 | any communication with her mother regarding Armstrong from May 9, 2022, through the

15 | present, except that her mother contacted her on July 25, 2022, to tell her that Armstrong could

16 | not pay the money due under the settlement agreement. She states that she is sure she and her

17 | mother discussed the matter further over the next few days, but does not recall the substance of

18 | any of those conversations, and she does not specify whether these conversations were verbal or

19 | by text message or some other mode of communication. Jennifer Holmes indicates that her

20 | iPhone has a setting that deletes text messages after 30 days. She does not have any text

21 | messages with her mother from the past two years. In addition, she lives with her mother, which

22 | she claims reduces the need to text or email her, and her employer does not allow her to send

23 |

1 personal text messages while working. She states that virtually all of her conversations with her

2 mother over the prior two years would have been in person, at home. (ECF No. 105-1.)

3    A declaration was also provided by Susan Holmes. (ECF No. 105-3.) She similarly states

4 that she does not often text her daughter because they live together and she (her daughter) has

5 been instructed not to text anyone while working.

6    Susan Holmes states that after May 9, 2022, she saved those text messages that she

7 thought were important, and has produced them, but historically, she deletes text messages after

8 she reads them. In addition, her iPhone has a setting that automatically deletes text messages

9 after 30 days.

10    The court concludes that Susan Holmes has deleted any text messages with her daughter,

11 Jennifer Holmes, and those messages cannot be restored or replaced through additional

12 discovery; therefore, the court will now address whether sanctions should be imposed.

13 **B. Sanctions re: Messages with Jennifer Holmes**

14    To impose sanctions under Rule 37(e)(1), the court must find Defendants have been

15 prejudiced by the loss of the information. "An evaluation of prejudice from the loss of

16 information necessarily includes an evaluation of the information's importance in the litigation."

17 Fed. R. Civ. P. 37(e), Advisory Committee's comment to the 2015 Amendment.

18    In evaluating prejudice, the court looks at "whether the [spoliating party's] actions

19 impaired [the non-spoliating party's] ability to go to trial or threatened to interfere with the

20 rightful decision of the case." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (citation

21 and quotation marks omitted); *see also Paisley Park Enter., Inc. v. Boxill*, 330 F.R.D. 226, 236

22 (D. Minn. Mar. 5, 2019) ("Prejudice exists when spoliation prohibits a party from presenting

23 evidence that is relevant to its underlying case.").

1    Imposing sanctions under Rule 37(e)(2) requires a finding that Susan Holmes acted with

2    intent to deprive Armstrong of use of the information in litigation. The Ninth Circuit recently

3    interpreted "intent," in the context of Rule 37(e)(2), as "involving the willful destruction of

4    evidence with the purpose of avoiding its discovery by an adverse party." *Jones v. Riot*

5    *Hospitality Group LLC*, 95 F.4th 730, 735 (9th Cir. 2024) (citations omitted). "Because intent

6    car rarely be shown directly, a district court may consider circumstantial evidence in determining

7    whether a party acted with the intent required for Rule 37(e)(2)." *Id*. (citations omitted). Factors

8    that are relevant in determining intent include: "the timing of the destruction, affirmative steps

9    taken to delete evidence, and selective preservation." *Id*. (citation omitted).

10    Prejudice is not a prerequisite to sanctions under Rule 37(e)(2). *Id*. at 736. Indeed,

11    "prejudice was not included as a requirement because 'the finding of intent required by [Rule

12    37(e)(2)] can support not only an inference that the lost information was unfavorable to the party

13    that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the

14    loss of information that would have favored its position.'" *Id*. (quoting Fed. R. Civ. P.

15    37advisory committee's note to 2015 amendment).

16    Armstrong maintains that Susan Holmes spoliated text messages with her daughter

17    regarding the Trust and/or Armstrong. Armstrong argues that one of the text message chains that

18    was produced between Susan Armstrong and her son, William, appears to show that William

19    offered to help show his sister, Jennifer, how to delete her text messages. In addition, the text

20    message chain contains Susan Holmes' admission that she deleted her own text messages.

21    Armstrong argues that the text messages affirm her intent to spoliate messages. (ECF No. 106.)

22    The relevant part of the text message chain states:

23        **William**:
          Jenny needs to do the same. I Can help walk her thru it.

6

**Susan**:
Well I can't so maybe you can
My texts were all deleted. Didn't I badmouth David to you??
We all think he's a greedy con
He seriously NEEDS TO GO DOWN
**William**:
do you know if jennys messages delete automatically?
**Susan**:
Have no clue
**William**:
Ok. Will talk to her tonight.
**Susan**:
I think they delete as she just tried to retrieve messages for her
work bonus
**William**:
Ok. Will talk to her tonight

(ECF No. 106-1 at 18.)

In response, a declaration of William Holmes was filed. He was shown the above text message chain and states that his mother had asked him to assist his sister in locating her text messages with her (Susan Holmes) for the relevant timeframe. (ECF No. 108.) He attaches the text message chain with his sister from the same date, where Jennifer stated that she was unable to access the content of her messages from T-Mobile, and she apologized that she could not help. William asked her if she could ask T-Mobile what her text message settings are and how long they keep the messages. Jennifer responded that they (presumably T-Mobile) suggested going to Apple for messages and going into recently deleted to get them, but she explained that she needed messages from 2022. (ECF No. 108-2.)

A review of William Holmes' declaration as well as the text message chain between William and Jennifer Holmes leads the court to conclude that William was not advising his sister how to delete her messages, as Armstong suggests.

Susan and Jennifer Holmes both state that the fact that they live together reduced the need to send messages via text (or presumably email), but neither states that they never texted

1   one another. The record demonstrates Susan Holmes was fairly prolific in texting other persons,

2   including her son, and opposing counsel, and those messages contained many spiteful references

3   to Armstrong. Therefore, the court finds it hard to believe that there were no messages between

4   Susan and Jennifer about Armstrong.

5          Even more troubling is that it appears Susan Holmes continued to delete her text

6   messages *after* she received the litigation preservation letter in this case. She states that she had a

7   policy of deleting text messages after reading them, but she clearly should have ceased this

8   policy after receiving the preservation letter. She also indicates she did not know that her iPhone

9   had a setting that deleted messages after 30 days, but the preservation letter also should have put

10   her and her counsel on notice to check her phone settings to make sure that relevant information

11   was not being deleted.

12          Even with that setting enabled, she admits that she still engaged in selective preservation

13   of messages. She kept the messages that *she* thought were important to the case, but deleted the

14   others. This is indicative of intent under Rule 37(e)(2). *See Jones v. Riot Hosp. Grp.*, No. CV-17-

15   04612-PHX-GMS, 2022 WL 3682031, at *6 (D. Ariz. Aug. 25, 2022), *affirmed,* 95 F.4th 730

16   (9th Cir. 2024) (where the plaintiff did not offer a justification as to why certain messages were

17   deleted but others were not, it was "reasonable to infer that she deleted these messages with

18   intent to deprive Defendants from using them in the litigation); *Leon*, 464 F.3d at 959 (court's

19   finding that plaintiff intentionally deleted documents was not clearly erroneous when plaintiff

20   knew he was under a duty to preserve but affirmatively deleted files).

21          While Jennifer Holmes states that she cannot specifically recall *at this time* any

22   conversations regarding Armstrong, she admits that they must have discussed further the matter

23   of Armstrong's alleged failure to pay under the settlement. Again, given the comments she made

about Armstong in her text messages with her son and to Armstrong's counsel, it is reasonable to infer that she likely made similar comments to her daughter. Moreover, Jennifer Holmes also had her iPhone on a setting that deletes text messages after 30 days and did not have *any* text messages with her mother for the prior two years, even though she was also served with a preservation letter

The timing, affirmative steps taken to delete messages *after* receiving a litigation preservation letter, and the selective deletion of messages all lead the court to believe that Susan Holmes acted with the requisite intent under Rule 37(e)(2).

In sum, Susan Holmes deleted text messages with her daughter, Jennifer Holmes, after May 8, 2022, when she entered into the settlement agreement concerning the Trust, and after she was served with a litigation preservation letter. Despite being aware that she was obligated to preserve any relevant messages, she failed to take reasonable steps to preserve the messages, and the messages are not recoverably by any reasonable alternative means. Therefore, sanctions are appropriate under Rule 37(e)(2).

The court must now consider the appropriate sanctions. Even if the court finds there was intent to deprive another party of use of the information in litigation, the court is not required to impose the sanctions listed under Rule 37(e)(2). Fed. R. Civ. P. 37 advisory committee note to 2015 Amendment. "The remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when … lesser measures such as those specified in subdivision e(1) would be sufficient to redress the loss." *Id*.

Armstrong requests that the sanctions include the entry of default judgment against Susan Holmes, or dismissal of her claims against Armstrong. "To dismiss a case under Rule 37(e)(2), a district court need only find that the Rule 37(e) prerequisites are met, the spoliating party acted

1   with the intent required under Rule 37(e)(2), and lesser sanctions are insufficient to address the

2   loss of the ESI." *Jones*, 95 F.4th at 735 (citing Fed. R. Civ. P. 37 advisory committee's note to

3   2015 amendment). Terminating sanctions, such as dismissal or the entry of default, however, are

4   very severe. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096

5   (9th Cir. 2007) (terminating sanction "is very severe.").

6           While Susan Holmes' conduct in continuing to delete messages after being served with a

7   litigation preservation letter is egregious, it has not so harmed Armstrong that he is unable to

8   present his case. While Susan Holmes' likely deleted messages that were relevant to this action,

9   the second amended complaint alleges that Susan Holmes breached the non-disparagement

10  provision of the settlement agreement. The non-disparagement provision precludes the settling

11  parties (Armstrong, Susan Holmes, William Holmes and Jennifer Holmes) from making public

12  or private statements *to any third party*. A disparaging statement from Susan Holmes to Jennifer

13  Holmes, and vice versa, does not appear to constitute a breach of the non-disparagement

14  provision because it would not be made to a third party. The deleted messages may provide

15  insight into whether disparaging remarks were made to third parties, but the deletion of the

16  messages does not necessarily prevent Armstrong from presenting his case.

17          Therefore, the court finds that a sanction lesser than dismissal or default is appropriate.

18  Armstrong alternatively requests that the court issue an adverse inference instruction that the text

19  messages and emails sent since May 9, 2022 contain derogatory statements about Armstrong.

20          In order to redress the harm resulting from Susan Holmes' improper deletion of the text

21  messages, the court will order that Armstrong may present evidence to the jury concerning Susan

22  Holmes' deletion of text messages after receiving a litigation preservation letter, and their likely

23  relevance to this litigation. The jury may consider that evidence, along with all the other

1  evidence in the case, in deciding whether to presume or infer the lost information was

2  unfavorable to Armstrong. The precise parameters of the jury instruction(s) will be subject to

3  District Judge Traum's review and approval prior to trial.

4       Finally, the court will address Mr. Stephenson's (Armstrong's counsel) statements

5  regarding Mr. Pyper's disparaging comments about him in a text message to his client, that

6  Susan Holmes forwarded to her son William via text. That text was then produced to

7  Mr. Stephenson with Williams' other text messages. The court is disappointed in this conduct. It

8  should go without saying, but obviously it bears repeating in this case: if you would not want

9  something you say attached as an exhibit to a court filing, as occurred here, then do not say it.

10 The court once again admonishes counsel to treat one another with respect and civility and to

11 take seriously the professional obligations to opposing counsel and the court. Further recurrence

12 of this conduct may result in the imposition of sanctions against counsel.

13                                    **III. CONCLUSION**

14       Armstrong's motion for spoliation sanctions (ECF No. 74) is **GRANTED IN PART**

15 **AND DENIED IN PART**. The motion is **DENIED** with respect to any text messages or emails

16 between Susan Holmes and William Holmes or Kerry Holmes. The motion is **GRANTED**

17 insofar as Armstrong may present evidence to the jury concerning Susan Holmes' deletion of

18 text messages to or from Jennifer Holmes after receiving a litigation preservation letter, and their

19 likely relevance to this litigation. The jury may consider that evidence, along with all the other

20 evidence in the case, in deciding whether to presume or infer the lost information was

21 unfavorable to Armstrong.

22 ///

23

1    The precise parameters of the jury instructions will be subject to District Judge Traum's

2  review and approval prior to trial.

3        **IT IS SO ORDERED**.

4        Dated: March 29, 2024.

5                                                                    _____
                                                                     Craig S. Denney
6                                                                    United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23