UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| THE R.J. ARMSTRONG LIVING TRUST and DAVID C. ARMSTRONG, | Case No. 3:22-cv-00375-ART-CSD |
| Plaintiffs, | ORDER ON MOTION TO DISMISS; MOTION FOR SUMMARY JUDGMENT (ECF Nos. 115, 117, 124) |
| v. | |
| SUSAN HELEN ARMSTRONG HOLMES, | |
| Defendant. | |

The R.J. Armstrong Living Trust, David Armstrong Trustee, and David Armstrong, individually, sued Defendant Susan Helen Armstrong Holmes in state court for breaching the non-disparagement provision in a settlement agreement. Susan counterclaimed for not releasing money bargained for in the same agreement. David and the Trust seek summary judgment on their claims and seek dismissal or summary judgment on Susan's counterclaims, on which Susan also seeks summary judgment. The Court grants summary judgment on all claims as listed below and in the order block.

## I.    Factual Background

This case concerns an inheritance dispute. For background, the Court recites facts from this case and the related action, 3:24-cv-00469-ART-CSD (cited as "AZ"), which was transferred to this Court from the District of Arizona.

### A. Family Background

Richard Armstrong established an inheritance, including a trust and a Fidelity account, for his living children, Susan (Defendant) and David (Plaintiff), and grandchildren around 2013. (AZ:ECF No. 1 at 3; ECF No. 107 at 3.) Richard's grandchildren allege that in 2016, David took advantage of Richard's declining mental state to steal these funds for himself and his son, Spencer. (AZ:ECF No. 1 at 4–6.) David alleges that he only followed the wishes of his father, who decided

that Susan and his grandchildren were financially irresponsible and undeserving. (*See* AZ:ECF No. 21 at 5.)

Around the time of Richard's death, Richard's other family members allegedly learned that David or Richard had transferred funds from the inheritance accounts in Arizona. (AZ:ECF No. 1 at 5.) Susan settled with David and the Trust regarding alleged fraud or mismanagement of the Trust in 2022. (*Id.*)

### B. The Settlement Agreement

The settlement agreement included David, as Trustee, and Beneficiaries Susan, William (Susan's son), and Jennifer (Susan's daughter). (ECF No. 104-1 at 2.) It states that "Beneficiaries claim . . . that David . . . has committed fraud and breached his fiduciary duties by . . . self-dealing" and that David "imprudently/improperly invested and pledged the Trust's funds." (ECF No. 104-1 at 3.) It then states that David "denies this alleged wrongdoing." (*Id.*) The settlement incorporates this and other recitals of alleged wrongdoing by David and Susan. (*Id.* at 5.)

The next terms establish several important conditions. In Term 2 of the settlement, David, as Trustee, agreed to pay Susan a "one-time, final lump sum of [$650,000] within sixty business days of the full execution of this agreement." (*Id.* at 6.) It also provided that William and Jennifer would each receive a payment of $15,000. (*Id.*) In exchange, in Term 3, Susan promised to give David's lawyer, John Stephenson, all financial records and information related to the trust and "all financial dealings of any kind or nature . . . particularly all information she claims demonstrates fraud." (*Id.*) Susan also promised to "permanently destroy all electronic information . . . in her possession . . . pertaining to the Trust." (*Id.* at 7.) The settlement states "[t]his is a material term and obligation of this Settlement Agreement and Release." (*Id.*)

In Terms 4 and 5, Susan and her children agreed to release claims against

the Trust, David, Stephenson, and all other employees and agents of the Trust arising out of the Trust, David's management of the Trust, or any other conduct related to the Trust. (ECF No. 104-1 at 7–9.) In Term 12, the agreement states that if any provision "other than Terms 2, 3, 4, and/or 5" are found invalid, "it shall not affect the validity or enforceability of this Agreement as a whole." (*Id.* at 11.)

Five other terms matter to this order. Term 8 is a confidentiality provision that restricts the parties from discussing the contract with third parties. (*Id.* at 10.) Term 9 is a non-disparagement provision which requires the parties "to refrain from public or private statements to any third party . . . which would disparage an opposing party." (*Id.* at 10.) Term 9 states, "[i]n the event of a breach of this provision, a court of competent jurisdiction can enforce the provision as material to this Agreement; however, the sole remedy available to the Parties is injunctive relief and reimbursement of attorneys' fees and costs to enforce the provision." (*Id.*) Term 10 states that "[t]he terms of this Agreement shall be construed as a whole according to their fair meaning" and "[t]his agreement is the entire, complete, sole, and only understanding and agreement of . . . the Settling Parties." (ECF No. 104-1 at 11.) Term 11 is a good faith clause which states that both parties understand that the agreement is being entered into in good faith and warrants that no promise was offered except that set forth in the contract. (*Id.*)

**C. David and Susan Disparage One Another**

Before and after the settlement agreement, Susan was no longer on speaking terms with David and communicated with him through text messages to his lawyer, Stephenson. (ECF No. 124-1 at 3.) Ten days after entering the settlement agreement, in late May, Susan told Stephenson by text message that David was betraying the family and stealing the inheritance. (*See* ECF No. 104-2 at 3–4.) Stephenson told Susan and Susan's lawyer that he wished to speak with

Susan directly to tell her to stop disparaging David and reminded her of her obligation under the contract. (*Id.*; ECF No. 104 at 5.)

In June, David called Christina Armstrong, the ex-wife of his deceased brother, to tell her that Susan is a moron, financially incompetent, and irresponsible, and that Richard did not like Susan. (ECF No. 130-4.) In July, Susan, in a text to Stephenson, accused David of inheritance theft and stated that David is evil and chose money over family. (ECF No. 104-3 at 2–4.) Susan then told Spencer, David's then-seventeen-year-old son, by text message that David's ex-wife was a "blonde bald devil and blonde bimbo" and that David had "robbed me and my kids and all the other grandkids of their inheritance and that's SO WRONG. . . ." (*Id.* at 4.) Around a week later, Susan accused Stephenson of tax evasion in a text message. (ECF No. 104-2 at 7.) Susan also sent another series of text messages to Spencer that she would send a video to the police of Spencer allegedly abusing Richard if David, who "chose love of money over love of family," did not follow through with the settlement agreement. (ECF No. 104-3 at 6.) Around the same time, David sent text messages to Kerry Armstrong, a niece, saying that Susan is trying to extort him and called her a "piece of shit." (ECF No. 130-at 9.)

Days before David's $650,000 payment to Susan was due, David told Susan that the Trust could not pay the entire sum and asked for an extension or a payment of $405,000. (ECF No. 130-6 at 68–69.) Susan refused. (*Id* at 69.)

## II.    Procedural History

David filed suit in Nevada state court alleging that Susan violated the non-disparagement clause and the implied covenant of good faith and fair dealing. (ECF No. 1-3.) Susan removed the case to this Court. (ECF No. 1.)

Following briefing on Susan's motion for summary judgment, the Court held that David could not receive money damages for violation of the non-disparagement provision because that provision explicitly limited relief to

injunctive relief and attorney's fees. (ECF Nos. 34, 51.) The Court also held that materiality of the non-disparagement provision was a question of fact for the jury and granted both parties' motions to amend. (*Id.*) Since then, both David and Susan have filed amended complaints, answers, and counterclaims, respectively, and motions for summary judgment. (*See* ECF Nos. 104, 107, 115, 124.)

David moves for summary judgment on Claim 1, Breach of the Non-Disparagement Provision, for Susan's text messages to Spencer and Stephenson. (ECF No. 115 at 10.) He moves for summary judgment on Claim 2, Breach of the Implied Covenant of Good Faith and Fair Dealing, for Susan's text messages to Spencer, Stephenson, and Susan's son William. (*Id.* at 13.) He moves for summary judgment on Claim 3, Breach of the Good Faith Provision, for the same conduct. (*Id.* at 15.)

Susan seeks summary judgment on Counterclaim 1, Breach of Contract for Nonpayment, for David's nonpayment of the settlement agreement. (ECF No. 124 at 2.) She seeks summary judgment on Counterclaim 2, Breach of Fiduciary Duty, for David's failure to consider her interests at the settlement conference. She seeks summary judgment on Counterclaim 3, labeled "injunction" but in substance Breach of the Non-Disparagement Provision, for David's text messages to Kerry. She seeks summary judgment on Counterclaims 4 and 5, Breach of the Implied Covenant of Good Faith and Fair Dealing and Breach of the Good Faith Provision of the contract, for the same conduct as Counterclaim 3.

David moved for summary judgment and dismissal of Susan's counterclaims. (ECF Nos. 115, 117.)

In a related case, several children of Richard's deceased sons have sued David under various Arizona causes of action related to inheritance theft. (*See* AZ:ECF No. 1.) The District of Arizona granted David's motion to transfer that case to this Court. (AZ:ECF No. 15.) The Court recently denied David's motions for summary judgment and dismissal, and the grandchildren's motion to

retransfer to Arizona, in that case. (AZ:ECF No. 49.)

## III.   Discussion

### A. Standard of Review – Summary Judgment

A party moving for summary judgment must show that there is no genuine issue as to any material fact. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court views the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Behrend v. San Francisco Zen Ctr., Inc.*, 108 F.4th 765, 768 (9th Cir. 2024). For cross-motions for summary judgment, the Court considers each party's evidence without considering which motion provided the evidence. *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

Where the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment *sua sponte* for the nonmoving party." *See* Fed. R. Civ. P. 56(f); *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014); *see also Gospel Missions of Am. V. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) ("district court may enter summary judgment *sua sponte* against a moving party if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'" (citation omitted)).

### B. Analysis of Claims and Counterclaims

The Court addresses the claims  in the following order: Susan's counterclaim for nonpayment (Counterclaim 1); both parties' claims for breach of the non-disparagement provision (Claim 1, Counterclaim 3); both parties' claims for breach of the implied covenant of good faith and fair dealing (Claim 2, Counterclaim 4); both parties' claims for breach of the good faith provision (Claim

3, Counterclaim 5); and Susan's claim for breach of fiduciary duty (Counterclaim 2).

"It has long been the policy in Nevada that absent some countervailing reason, contracts will be construed from the written language and enforced as written." *Kaldi v. Farmers Ins. Exch.*, 21 P.3d 16, 20 (Nev. 2001). "[C]onstruction of a contractual term is a question of law." *Sheehan & Sheehan v. Nelson Malley & Co.*, 117 P.3d 219, 223 (Nev. 2005).

### 1. Breach of Contract for Nonpayment (Counterclaim 1)

Susan moves for summary judgment on her counterclaim for breach of contract, alleging that David breached by not paying $650,000 after Susan released her claims under the settlement. (*See* ECF No. 124 at 2.) David now argues that Susan's breach of contract counterclaim fails because Susan materially breached the good faith and non-disparagement provisions of the contract, failed to perform, and failed to allege damages. (ECF No. 115 at 17; ECF No. 117 at 4–5.) Because the non-disparagement provision is not a material term of the settlement agreement, Susan is entitled to summary judgment on this counterclaim.

### a. Reconsideration of Non-Disparagement's Materiality

The Court construes Susan's request for *sua sponte* summary judgment on this counterclaim as a motion to reconsider its earlier ruling that the non-disparagement provision is not material to the settlement agreement. (*See* ECF No. 124 at 2.)

Earlier in the litigation, Susan moved for summary judgment on her counterclaim for breach by nonpayment and argued that no term in the contract excused David from paying. (ECF Nos. 34 at 7; 40 at 2–3.) David responded that Susan's alleged breach was material and excused nonpayment and that Susan was equitably estopped from seeking payment because she entered the contract intending to breach. (*See* ECF No. 39-1 at 3.) The Court denied Susan's motion,

1    holding "that whether [Susan's] alleged breaches are material breaches is a

2    disputed issue of fact." (ECF No. 51 at 8.) The Court also held that "Plaintiffs . . .

3    cannot suspend performance based only on breach of the [non-disparagement

4    provision], even if the breach is a material breach." (*Id.*)

5        Under its inherent power to reconsider interlocutory orders, the Court now

6    holds that the non-disparagement provision is not a material term of the

7    settlement agreement, so no party may suspend performance based on breach of

8    the non-disparagement provision. *See* Fed. R. Civ. P. 54 (court may revise any

9    order that adjudicates fewer than all the claims of all the parties . . . at any time

10   before the entry of a judgment); LR 59-1; *see Peralta v. Dillard*, 744 F.3d 1076,

11   1088 (9th Cir. 2014).

12       The non-disparagement provision, Term 9, states that "a court of

13   competent jurisdiction can enforce the provision as material to this agreement."

14   (ECF No. 104-1 at 10.) This term allows the Court to decide as a matter of contract

15   interpretation whether it is material. Both parties agree that this Court is a court

16   of competent jurisdiction. (ECF Nos. 137, 138.) Accordingly, the Court construes

17   Term 9 as non-material and enforces the contract as written. *Kaldi*, 21 P.3d at

18   20.

19       The text of the settlement agreement shows that that the non-

20   disparagement clause is not material. *The Power Co. v. Henry*, 321 P.3d 858, 863

21   (Nev. 2014) ("when a contract's language is unambiguous," a court "will construe

22   . . . it according to that language"). Under the settlement agreement, which must

23   be interpreted as a whole, (ECF No. 104-1 at 11 (Term 10)), certain provisions are

24   material. Terms 2, 4, and 5, establishing payment terms and release of claims,

25   are material as a matter of law. *See Matter of Est. of Kern*, 823 P.2d 275, 277 (Nev.

26   1991) ("price" and "payment terms" are material terms); *May v. Anderson*, 119

27   P.3d 1254, 1258 (Nev. 2005) (release of claims always material in a settlement

28   agreement). The agreement states that Term 3, requiring Susan to turn over

8

potentially inculpatory material to David, "is a material term and obligation of this Settlement Agreement and Release." (ECF 104-1 at 6.) Term 12, the savings clause, reinforces the materiality of these terms by stating that Terms 2, 3, 4, and 5 are the only terms, which, if found invalid, would "affect the validity or enforceability of this Agreement as a whole." (*Id.* at 11.)

In contrast, Term 9, the non-disparagement provision, is not material. It states that "a court of competent jurisdiction can enforce the provision as material." (ECF No. 104-1 at 10.) On its plain reading and considered alongside other terms, it is not material. Term 3 explicitly states that it "is a material term" while the non-disparagement provision does not. (ECF No. 104-1 at 6.) The non-disparagement clause prohibits the kinds of damages normally expected in a material term, like money damages or recission, and instead only allows attorney's fees and injunctive relief, which further supports finding that it is not material. (*Id.* at 9.) While David's opposition to Susan's original motion for summary judgment asserted via declaration that he believed the non-disparagement provision was a material term, Term 10 of the contract states "[t]his agreement is the entire, complete, sole, and only understanding and agreement of . . . the Settling Parties." (*See* ECF No. 39-1 at 3; ECF No. 104-1 at 11.) The plain language of Term 9, read in the context of the agreement, leads the Court to hold that it is not a material provision.

### b. Susan is Entitled to Relief on Her Nonpayment Claim

Susan is entitled to summary judgment on her nonpayment claim, and the Court rejects David's argument that she materially breached, failed to perform, or failed to allege damages. Susan did not materially breach the Settlement Agreement when she disparaged David, although, as discussed below, she did violate the non-disparagement clause.[1] Nor did Susan fail to perform her end of

---

[1] As discussed below, neither David nor Susan's disparaging remarks violated the Good Faith clause.

the bargain: she released her claims of financial mismanagement and fraud against David and the Trust, as the plain language of the contract shows. (*See* ECF No. 104-1 at 7–9.) Nor did Susan fail to allege damages: she alleged damages of $650,000 promised in the contract. (ECF No. 107 at 4.)

David also argues that the Court should not credit Susan's allegation that David offered $405,000 instead of $650,000 upon not having enough money to pay her because that sort of oral modification is "expressly barred by Section 20 of the Settlement Agreement." (ECF No. 117 at 5.) There is no dispute of material fact that David did as Susan alleged. (ECF No. 130-6 at 68–69.) The Court reiterates that it earlier held that David may not suspend performance based on Susan disparaging him. (*See* ECF No. 51 at 8.) Accordingly, the Court grants summary judgment to Susan on her breach of contract counterclaim (Counterclaim 1).

**2. Breach of Non-Disparagement Term (Claim 1, Counterclaim 3)**

As recited above, Term 9, the non-disparagement clause, bars parties from disparaging other parties to "third parties." (ECF No. 104-1 at 10.) David claims that Susan breached this term by sending disparaging messages to David's son Spencer, David's lawyer Stephenson, and Susan's son William. (ECF No. 104 at 8 (Claim 1).) Susan counterclaims that David breached the non-disparagement clause by sending disparaging messages about Susan to her niece, Kerry Armstrong. (ECF No. 107 at 6 (Counterclaim 3).)

**a. Susan Disparaged David to Spencer (Claim 1)**

There is no dispute that Susan disparaged Spencer by claiming that David stole the inheritance, chose money over family, and otherwise spoke ill of David's character and conduct. (See ECF No. 104-3 at 2–13.) Though Susan argues that this claim may not be brought by the Trust, (ECF No. 124 at 12–14), she cites no law to support her argument. David argues that the Trust is a party to the settlement agreement, and David is the Trustee. (ECF No. 128 at 4.) Trusts may

sue to enforce their contractual rights. *See, e.g., Frederic & Barbara Rosenberg Living Tr. v. MacDonald Highlands Realty, LLC*, 427 P.3d 104, 112 (Nev. 2018). David is also suing Susan in his individual capacity for disparagement, and Susan has not otherwise contested that she sent the messages to Spencer. Accordingly, the Court grants summary judgment to David, individually and in his capacity as Trustee, based on Susan's comments to Spencer in breach of the non-disparagement clause.

### b. Susan Disparaged David to Stephenson (Claim 1)

The parties dispute whether Stephenson, David's lawyer, is a third party for purposes of the disparagement clause. Susan argues that Stephenson is not a third party and even if he was, her comments to Stephenson were protected by Nevada's litigation privilege. (ECF No. 124 at 14–15.) David argues that no Nevada law supports Susan's position and that the litigation privilege does not apply. (ECF No. 128 at 4.)

Susan offers persuasive precedent suggesting that lawyers should not be considered third parties for claims sounding in defamation. In *Maine v. Allstate Insurance Company*, an insurance company accused the plaintiff of arson in a letter to the plaintiff's lawyer, and the plaintiff sued for defamation based on publication to his lawyer. 240 So. 2d 857, 858–59 (Fla. Dist. Ct. App. 1970). In holding that the letter to the lawyer was not publication to a third party, the court reasoned that the purpose of defamation is to avoid circulating disparaging information. *See id.* Lawyers are unlikely to circulate disparaging information about their clients because of their agency relationship and obligations of confidentiality. *Id.* (collecting cases). David responded that Susan did not offer a Nevada or federal case to show this point. *But see Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (federal courts confronting a state law issue without binding precedent may use persuasive cases from other jurisdictions). *Maine's* rationale is persuasive here because Susan could only

11

communicate with David through Stephenson before and after the settlement negotiations. (ECF No. 124-1 at 3.)

Accordingly, the Court holds that Stephenson is not a third party for purposes of breach and declines to reach the issue of litigation privilege. The Court grants summary judgment to Susan on David and the Trust's claims for breach against Stephenson (Claim 1) and to David on his claims for breach of contract against Susan.

### c. David Disparaged Susan to Kerry (Counterclaim 3)

Susan counterclaims that David disparaged Susan to her niece Kerry, a non-party, in violation of the non-disparagement provision (ECF No. 107 at 5), and it seeks injunctive relief and attorney's fees as damages, as permitted by that term. (ECF No. 104-1 at 10.) David seeks to dismiss the claim because it is improperly pled as "injunction" instead of "breach." (ECF Nos. 115 at 19–20; ECF No. 117 at 7.) The federal rules discourage dismissal on technicalities. *See Perez-Perez v. Bondi*, 127 F.4th 1180, 1182 (9th Cir. 2025) (citing *Foman v. Davis*, 371 U.S. 178, 181 (1962); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007)). While this claim should have been labeled as breach of the non-disparagement provision of the contract, not "injunction," that discrepancy is not grounds for dismissal. Additionally, the Court finds that there is no dispute of fact that David disparaged Susan to Kerry. Accordingly, the Court denies David's motion to dismiss this counterclaim and grants summary judgment to Susan on Counterclaim 3.

### 3. Breach of Implied Covenant (Claim 2, Counterclaim 4)

David also claims that Susan violated the implied covenant of good faith and fair dealing by comments Susan made to her son William, who is a party to the settlement agreement. David and Susan each also bring claims under the implied covenant of good faith and fair dealing for the same disparaging comments discussed above. *Supra* B.2.

1

**a. Susan Disparaged David to William (Claim 2)**

2    David claims that Susan violated the implied covenant of good faith and

3  fair dealing by disparaging David to her son, William, who is a party to the

4  settlement. Susan responds that the settlement agreement anticipated permitting

5  parties to the agreement to disparage one another. (*See* ECF No. 124 at 15.)

6    The implied covenant applies when one party literally complies with the

7  terms of a contract but deliberately violates the contract's intention and spirit.

8  *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991).

9  It does not apply when the conduct alleged does "not constitute an arbitrary or

10  unfair act that worked to [the other party's] disadvantage." *Nelson*, 163 P.3d at

11  227 (reversing jury finding of breach of implied covenant because alleged breach

12  did not correspond to "a duty under the contract").

13    By its terms, *Kaldi*, 21 P.3d at 20, the intention and spirit of the settlement

14  agreement was to allow parties to disparage each other, not to prohibit them from

15  doing so. The parties already knew of the allegations of fraud and financial

16  mismanagement that gave rise to the agreement. (ECF No. 104-1 at 3–4 (Recitals

17  H, J).) The parties agreed to confidentiality and non-disparagement provisions

18  limited to third parties. (ECF No. 104-1 at 10 (Terms 8, 9).) These terms show the

19  parties' intent to avoid circulating damaging allegations to third parties, not to

20  each other. Additionally, allowing typical remedies for breach of the implied

21  covenant would allow a party to extract a more severe penalty for a less severe

22  harm than breaching the non-disparagement clause, which limits damages to

23  injunctive relief and attorney's fees. *See Phillips v. Mercer*, 579 P.2d 174, 176

24  (Nev. 1978) (specific remedy may be exclusive in lieu of typical remedies, and "[a]

25  court should not interpret a contract so as to make meaningless its provisions");

26  *see also Shelton v. Shelton*, 78 P.3d 507, 510 (Nev. 2003) (specific terms qualify

27  the meaning of general terms). The Court finds that this claim fails under the

28  plain language of the contract and enters summary judgment in favor of Susan.

### b. Redundant Implied Covenant Claims (Claim 2, Counterclaim 4)

The remaining claims for breach of the implied covenant are redundant because they are based on the same conduct, comments made to Spencer, Stephenson, and Kerry, as the claims for breach of the non-disparagement clause. While "all contracts impose upon the parties an implied covenant of good faith and fair dealing," *Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007), "[i]t is well established that a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim." *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1252 (D. Nev. 2016), *amended in part,* No. 3:13-CV-0445-LRH-VPC, 2016 WL 11722898 (D. Nev. Nov. 1, 2016) (citing *Daly v. United Healthcare Ins. Co.*, 2010 WL 4510911, at *2 (N.D. Cal. 2010); *see also Guz v. Bechtel Nat. Inc.*, 8 P.3d 1089 (Cal. 2010)). Susan already alleged breach of the non-disparagement provision of the contract against David for disparaging Susan to Kerry, and David already alleged breach of the same against Susan for disparaging him to Stephenson and Spencer. Accordingly, the Court grants summary judgment to David on Susan's counterclaim and to Susan on David's claims based on disparagement to Spencer and Stephenson (Claim 2, Counterclaim 4).

### 4. Breach of Good Faith Provision (Claim 3, Counterclaim 5)

Also related to disparagement, David and Susan each allege that the other violated Term 11 of the contract, which states that both parties have entered the contract in good faith. (ECF No. 104 at 10–11.) According to David, Susan did not enter the contract in good faith because she disparaged David shortly after entering a contract with a non-disparagement clause. (ECF No. 115 at 15.) Susan counterclaims that David did not enter the contract in good faith because he "began disparaging [her] briefly thereafter." (ECF No. 107 at 7.)

Under Nevada contract law, "a specific provision will qualify the meaning of a general provision." *Shelton*, 78 P.3d at 510. Allowing disparagement to give

rise to claims for money damages and recission through the good faith term, a general provision, would contradict the contract's intention in the non-disparagement term, a specific provision, of restricting damages for disparagement to injunctive relief and attorney's fees. Neither party may claim breach of the Good Faith provision by alleging that the other made or intended to make disparaging comments. The Court enters summary judgment for David on Susan's claim and for Susan on David's claim for breach of the good faith term.

### 5. Susan's Breach of Fiduciary Duty Counterclaim (Counterclaim 2)

David moves for summary judgment and dismissal on Susan's claim that David breached his fiduciary duty by "negotiating with her to obtain a reduced inheritance" in the settlement agreement and demanding that the parties agree to a release of claims. (ECF No. 107 at 5.) David makes several arguments, including that Susan waived this claim when she released David and the Trust from claims in the settlement agreement. (ECF No. 115 at 18–19.)

In Nevada, contracts are "construed from the written language and enforced as written." *Kaldi*, 21 P.3d at 20. The settlement agreement states that Susan released claims against the Trust "which arise out of . . . [David's] management of the Trust . . . including . . . financial dealings by the Trust." (ECF No. 104-1 at 7.) Susan does not respond to this argument. (*See* ECF No. 125 at 4.) Accordingly, the Court grants David's motion for summary judgment on Susan's breach of fiduciary duty counterclaim.

### IV. CONCLUSION

The Court grants Susan summary judgment on Counterclaim 1, breach of contract, for failing to pay Susan $650,000. (ECF No. 124.)

The Court grants Susan summary judgment on Counterclaim 3, breach of the non-disparagement provision, for David's comments to Susan's niece.

The Court grants David summary judgment on Claim 1, breach of the non-disparagement provision, for Susan's comments to David's son. (ECF No. 115.)

1    The Court denies David's motion to dismiss as moot. (ECF No. 117.)

2    The Court grants summary judgment to Susan on David's remaining

3 claims and summary judgment to David on Susan's remaining claims. (ECF No.

4 117.)

5    The Court orders the parties to meet and confer then brief the Court on

6 how to proceed to the damages stage of this proceeding within 30 days.

7

8    DATED THIS 31st day of March 2025.

9

10    _____

11    ANNE R. TRAUM
      UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28